**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————

No. 05-3614
——————

TYSON ALAN DITCH,

<u>Appellant</u>

v.

JAMES L. GRACE

——————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00164E)
District Judge: Hon. Sean J. McLaughlin

——————

Argued October 25, 2006

BEFORE: SMITH, FISHER and  COWEN, <u>Circuit Judges</u>

(Filed: March 1, 2007)

Tyson R. Smith, Esq. (Argued)
Winston & Strawn
1700 K Street, N.W.
Washington, DC 20006

Counsel for Appellant

Douglas W. Ferguson, Esq. (Argued)
Office of District Attorney
Crawford County Courthouse
Meadville, PA 16335

Counsel for Appellee

————————

OPINION

————————

COWEN, <u>Circuit Judge</u>.

Tyson A. Ditch appeals from an order of the United
States District Court for the Western District of Pennsylvania
dismissing his petition for writ of habeas corpus filed under 28
U.S.C. § 2254. For the reasons stated below, we will affirm the
order of the District Court.

I.

At approximately 3:00 a.m. on February 18, 1998, ten
gunshots were fired into the front door of the apartment of Dasha
Yenney, Ditch's former girlfriend. The police arrived, and, upon
investigation, found bullet fragments and a casing from a nine
millimeter bullet outside of the apartment. Yenney informed the
police that she had recently received harassing telephone calls
from Ditch, and that Ditch had been arrested in the past for
harassing and physically abusing her. While the police were
investigating the crime scene, Ditch telephoned Yenney. When
the police attempted to speak to him, he terminated the call. The
police traced the call to Ditch's brother's residence and obtained
warrants to search the residence. Upon execution of the
warrants, the police found Ditch asleep in the attic of the
residence, and, approximately fifteen feet away from him, a nine
millimeter Ruger pistol. The police arrested Ditch and took him
into custody. Later, based upon a ballistics analysis, the
Pennsylvania State Police laboratory determined that the bullet
fragments and casing retrieved from the crime scene were fired
from the same pistol seized from the attic.

2

On June 16, 1998, Ditch appeared without counsel at a preliminary hearing. At the hearing, Ditch asked the presiding judge for a continuance in order to seek counsel. He related to the judge that he had made several telephone calls to an attorney, but had not yet received an answer to his calls. The judge denied the request, reasoning only that twenty days had elapsed since the arraignment. After presenting Ditch with a Waiver of Counsel form, which Ditch refused to sign, the judge proceeded with the hearing. At the uncounseled hearing, Ronald Fry, a witness for the Commonwealth, identified Ditch as the individual he saw leaving the apartment building in the early morning hours of the day of the incident.

At trial Fry testified that he made a positive identification of Ditch at the preliminary hearing. He also made a positive identification of Ditch at trial, but only after he was permitted to leave the witness stand and approach the defense table. He testified that he could not identify Ditch from the witness stand because his eyes are light-sensitive. Fry further admitted that he was legally blind and was not wearing glasses at the time of the incident. He testified, however, that he did not have any difficulty seeing Ditch through his apartment window at the time of the incident, even though his window was located approximately ten or fifteen feet away from Yenney's apartment door. He testified that the area of the apartment building in which he saw Ditch was well-lit.

Following trial, Ditch was convicted by a jury of criminal attempt to commit burglary, reckless endangerment of another person, and unlawful possession of a firearm. He was also convicted of the summary offense of criminal mischief. Ditch was sentenced to an aggregate term of imprisonment of seven-and-a-half to fifteen years. On May 3, 2001, the Superior Court of Pennsylvania affirmed Ditch's convictions, and on December 30, 2003, the Pennsylvania Supreme Court denied Ditch's petition for allowance of appeal, which was filed *nunc pro tunc*.

On June 21, 2004, Ditch filed a petition for writ of habeas corpus with the District Court under § 2254, challenging several aspects of his convictions. The District Court denied the petition and found no basis for issuance of a Certificate of Appealability

("COA").

On December 20, 2005, this Court granted Ditch's request for a COA with respect to two issues: (1) whether the District Court erred in denying his petition for writ of habeas corpus as to Ditch's claim that he was denied his constitutional right to counsel at his preliminary hearing; and (2) whether the District Court erred in denying his petition for writ of habeas corpus as to Ditch's claim that he was deprived of effective assistance of counsel because trial counsel failed to file a motion to suppress the identification which occurred at the uncounseled preliminary hearing.[1]  We have jurisdiction to review Ditch's claims under 28 U.S.C. §§ 1291 and 2253.

II.

A.

Ditch's first argument is that the District Court should have granted his habeas petition because he was denied his right to counsel at his preliminary hearing in violation of the Sixth Amendment of the Constitution.  For the reasons stated below, we conclude that while Ditch was denied counsel at his preliminary hearing, he is not entitled to habeas relief because the constitutional error was harmless.

1.

We begin our analysis by considering Ditch's claim that he had a right to, but was  denied, counsel at his preliminary hearing.  In *Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970), the Supreme Court held that a defendant was entitled to representation of counsel at his Alabama preliminary hearing. The Court reasoned that under Alabama law a preliminary hearing is a "critical stage" of the criminal prosecution.  *Id*.  The

---

[1] We conclude that the certified claims were fairly presented to the state court on direct review for purposes of the exhaustion requirement under 28 U.S.C. § 2254(b).  *See McCandless v. Vaughn,* 172 F.3d 255, 260-61 (3d Cir. 1999).

4

Court noted that at an Alabama preliminary hearing, the accused is discharged or held to answer, as the facts may warrant, and that the hearing seeks to determine whether there is probable cause to believe that a crime has been committed and serves to protect the accused from groundless prosecutions, among other things. *Id.* at 8. The Court then delineated the advantages of a lawyer's assistance at such a hearing:

> First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

*Id.* at 9. In light of the defendant's inability to realize these advantages on his own, the Court concluded that the defendant was as much entitled to the aid of counsel at the Alabama preliminary hearing as at the trial itself. *Id.*

Applying the reasoning used in *Coleman*, we conclude that a Pennsylvania preliminary hearing is also a critical stage in a criminal prosecution. At a Pennsylvania preliminary hearing, the Commonwealth may assume charge of the prosecution and recommend to the issuing authority that the defendant be discharged or bound over to the court. *See* Pa. R. Crim. P. 542(A). At the hearing, "the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." *Commonwealth v. Oliver*, 869 A.2d 1167, 1171

5

(Pa. Commw. Ct. 2005) (citations omitted).  Moreover, as in Alabama, a principal function of the hearing in Pennsylvania is to protect the accused's right against an unlawful arrest and detention. *Id.*

Because the Pennsylvania preliminary hearing is a critical stage of a criminal prosecution, we likewise conclude that Ditch was entitled to the assistance of effective counsel at that hearing. *See Coleman*, 399 U.S. at 9-10; *Commonwealth v. Carver*, 436 A.2d 1209, 1211 (Pa. Super Ct. 1981) ("It is axiomatic that the preliminary hearing is a 'critical stage' of a criminal proceeding, at which [the accused] is entitled to the assistance of effective counsel."); *Commonwealth v. Rines*, 372 A.2d 901, 902 (Pa. Super. Ct. 1977) ("It is, of course, well settled that a defendant is entitled to the effective assistance of counsel at a preliminary hearing."); *see also Commonwealth v. Sawyer,* 357 A.2d 587, 589 (Pa. Super Ct. 1976); *Commonwealth v. Redshaw*, 323 A.2d 92, 93 (Pa. Super. Ct. 1974).

Based upon the record before us, it is clear that Ditch was denied his right to counsel at the preliminary hearing.  At the beginning of the hearing, Ditch informed the state court judge that he wished to secure representation and requested a continuance to do so, but the judge denied the request, reasoning only that twenty days had elapsed since the arraignment.  There is nothing in the record to suggest that Ditch waived or forfeited his right to counsel.  Thus, we conclude that Ditch was denied his right to counsel at his preliminary hearing in violation of the Sixth Amendment.

2.

Having concluded that Ditch was denied his right to counsel, there remains the question of relief.  Ditch argues that the denial of counsel warrants automatic vacatur of his conviction.  In support, he argues that a preliminary hearing is a critical stage of the prosecution and that at his preliminary hearing a witness made a positive identification of him which was later used against him at trial.  For the reasons given below, we conclude that the test to be applied in this case is whether the denial of counsel at the preliminary hearing was harmless error.

A denial of counsel at a preliminary hearing does not automatically entitle an accused to vacatur and a new trial. *See Coleman*, 399 U.S. at 11. In *Coleman*, the Supreme Court found that the defendants were denied their right to counsel at their preliminary hearing, but remanded for a determination of "whether the denial of counsel at the preliminary hearing was harmless error." *Id.* Indeed, *Coleman* stands for the proposition that even though a preliminary hearing may be a critical stage in the criminal process, a denial of counsel at the preliminary hearing does not automatically warrant vacatur.

Ditch's other argument in support of vacatur is more persuasive, albeit ultimately unavailing. Ditch underscores that a witness identification made at the uncounseled preliminary hearing was later used against him at trial. He claims that the lack of counsel under these circumstances infected the entire proceeding and warrants vacatur. *See Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (stating that only those "Sixth Amendment violations that *pervade the entire proceeding*" can never be considered harmless" (emphasis added)).

Notably, *Coleman* does not address the appropriate relief in a case involving a denial of counsel at a preliminary hearing where evidence obtained from the hearing is later used against the defendant at trial. In *Coleman*, the state trial court prohibited the use at trial of any of the evidence gathered at the uncounseled pretrial proceeding. Indeed, in prescribing a harmless error analysis, the *Coleman* Court specifically noted that the trial court had scrupulously observed that prohibition. 399 U.S. at 10 (citing for comparison the case of *White v. Maryland*, 373 U.S. 59 (1963)). Thus, while as a general proposition *Coleman* provides support for application of a harmless error standard in cases involving the denial of counsel at preliminary hearings, we cannot rest our conclusion solely on that case.

Insofar as evidence obtained from the uncounseled preliminary hearing was later used against Ditch at trial, this case resembles *White*, *supra*. In *White*, the defendant's admission of guilt entered at a preliminary hearing without counsel was later used against the defendant at trial. 373 U.S. at

59-60.  In *White*, unlike the case in *Coleman*, the Supreme Court found structural error and vacated the defendant's criminal conviction without a showing of prejudice.  *Id.* at 60.  However, as with *Coleman*, this case is factually distinguishable from *White*, in that the tainted evidence here was a witness's positive identification of the accused, not an irreversible admission of guilt.  Thus, the question of relief presented by the facts of this case is not squarely addressed by either *Coleman* or *White*.

Although neither *Coleman* nor *White* is apposite, we find solace in another line of Supreme Court case law which clearly prescribes a harmless error standard in cases involving the admission of evidence at trial of uncounseled pretrial identifications.  *See Gilbert v. California*, 388 U.S. 263, 274 (1967) (prescribing a harmless error standard to the admission at trial of testimony of an uncounseled pretrial identification); *Moore v. Illinois*, 434 U.S. 220, 232 (1977) ("In view of the violation of petitioner's Sixth and Fourteenth Amendment right to counsel at the pretrial corporeal identification, and of the prosecution's exploitation at trial of evidence derived directly from that violation, we reverse the judgment of the Court of Appeals and remand for a determination of whether the failure to exclude that evidence was harmless constitutional error . . . .").  In both *Gilbert* and *Moore*, the Supreme Court opined that the ultimate admission of evidence of an identification made at a pretrial proceeding without counsel is subject to a harmless error standard.

Since the ultimate admission of evidence of an uncounseled identification is subject to a harmless error standard, we conclude by extension of *Gilbert* and *Moore*, that the underlying denial of counsel is also subject to a harmless error analysis.  Unlike the  irreversible admission of guilt in *White*, the admission of an uncounseled identification does not necessarily "pervade the entire proceeding," *Satterwhite*, 486 U.S. at 256, nor is it "necessarily unquantifiable and indeterminate," *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993).  In sum, based upon the confluence of *Coleman*, *Gilbert* and *Moore*, we hold that the denial of counsel at Ditch's preliminary hearing is subject to a harmless error standard, even though evidence of the identification made at the hearing was

later used against him at trial.

3.

Next, we address Ditch's related contention that even if no structural error occurred, he is entitled to a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *Cronic*, 466 U.S. at 658-59). The *Cronic* Court said that the first and "[m]ost obvious" situation in which a presumption of prejudice applies is a "complete denial of counsel." 466 U.S. at 659. The Court explained that a trial would be presumptively unfair where the accused is denied the presence of counsel at "a critical stage." *Id*. Ditch argues that because he was denied counsel at a "critical stage" of litigation, he is entitled to an automatic presumption of prejudice under *Cronic*.

Ditch's argument has some appeal. Under an expansive reading of *Cronic*, a denial of counsel at any critical stage, including a preliminary hearing, would warrant a presumption of prejudice. However, we conclude that *Cronic* should be read in a more limited fashion. We agree with the Court of Appeals for the Fourth Circuit in *United States v. Owen*, 407 F.3d 222 (4th Cir. 2005), which case is discussed below, that *Cronic* prescribes a presumption of prejudice only with regard to those critical stages of litigation where a denial of counsel would necessarily undermine the reliability of the entire criminal proceeding.

In *Owen*, the defendant claimed that he was denied his right to counsel at his criminal arraignment and that he was entitled to a presumption of prejudice under *Cronic*. Id. at 225, 228. The *Owen* court disagreed with the defendant's claim that he was denied his right to counsel, but indicated that even if he had been denied his right to counsel, he was not entitled to a presumption of prejudice under *Cronic* and the error was harmless. *Id*. at 225-229. The court opined that *Cronic* relies on a narrow usage of the phrase "critical stage" to mean a

proceeding at which a denial of counsel would necessarily undermine the reliability of the entire criminal proceeding. *Id.* at 228. The *Owen* court observed that, in other cases such as *Coleman*, the Supreme Court has used the phrase "critical stage" in a broader sense, to refer to all proceedings at which the Sixth Amendment right to counsel attaches, including those at which the denial of such is subject to harmless error analysis. *Id.* Thus, while Owen's arraignment was a "critical stage" of litigation at which the right of counsel attaches under *Coleman*, an uncounseled arraignment would not necessarily undermine the entire criminal proceeding requiring a presumption of prejudice under *Cronic*. *Id.* at 228-29. Accordingly, citing to *Coleman*, the *Owen* court applied a harmless error analysis. *Id.*

Like our sister court in *Owen*, we read *Cronic* in a limited fashion. A denial of counsel at any critical stage at which the right to counsel attaches does not require a presumption of prejudice. Rather, a presumption of prejudice applies only in cases where the denial of counsel would necessarily undermine the reliability of the entire criminal proceeding. *See also Hammonds v. Newsome*, 816 F.2d 611, 613 (11th Cir. 1987) (interpreting *Cronic* in a limited fashion); *Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985) ("*Coleman's* harmless error analysis remains good law."). Because we cannot conclude that the denial of counsel at the preliminary hearing necessarily undermined the entire criminal proceeding, we will apply a harmless error analysis in this case.

4.

We now turn to the salient question of whether the denial of Ditch's right to counsel at his preliminary hearing was harmless error. To determine whether constitutional error in a habeas case was harmless, we must decide whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see also Hassine v. Zimmerman*, 160 F.3d 941, 953 (3d Cir. 1998) (holding that "a federal habeas court performing a harmless error inquiry on collateral review must employ the standard for harmless error articulated in *Brecht*, even if the state courts have never reviewed the error on direct appeal.").

10

In making the harmless error determination, "the crucial inquiry is the impact of the error on the minds of the jurors in the total setting." *Hassine*, 160 F.3d at 955 (citations and internal quotation marks omitted). "While the nature of the evidence against [Ditch] is important, we must also examine the phases of the trial affected by the error, and determine whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error." *Id.* "In doing so, we must of necessity weigh the impact of evidence on the jury and cannot help but make a judgment as to how the jury would reasonably perceive [Ditch's] version of the events with and without the [denial of counsel] violation." *Id.*

The record before us indicates that the evidence of guilt at trial was substantial. The Commonwealth presented unchallenged expert ballistics testimony. The ballistics expert testified that bullet fragments and a shell casing found at the crime scene matched the nine millimeter Ruger hand gun which the police found later that same morning within fifteen feet of Ditch. As even Ditch conceded in one of his briefs filed in state court, "[t]here is no question that the most 'damming' evidence received by the jury at trial was the ballistics evidence linking the crime scene evidence to a firearm discovered at the home of Mr. Ditch's brother, where, apparently, Mr. Ditch the[n] resid[ed]." (Memorandum in Support of Defendant's Motion for Post Conviction Collateral Relief at 8.)

In addition to the unchallenged ballistics evidence, the Commonwealth presented evidence linking Ditch to Dasha Yenney in the evening hours before the crime. As noted in Section I above, Yenney, a formal girlfriend of Ditch, lived in the apartment into whose door the gunshots were fired. The Commonwealth presented evidence that Yenney had received harassing telephone calls from Ditch in the evening of February 17, 1998, and that Ditch had been arrested in the past for harassing and physically abusing her. Thus, the weight of the evidence against Ditch at trial was substantial.

Even if the evidence against Ditch was substantial, the conviction must be vacated and a new trial ordered if the denial of counsel had a substantial influence on the verdict despite the

11

substantial evidence.  Here, the phase of trial most directly impacted by the denial of counsel was Fry's testimony.  Fry testified that he had identified Ditch at the preliminary hearing and again identified him at trial, and he did give some details about the night of the incident, including a general description of the clothing that the individual was wearing.

However, Fry's identification testimony was not a particularly strong part of the Commonwealth's case, for at least two reasons.  First, Fry admitted on the stand that he was legally blind and was not wearing glasses at the time of the incident.  Second, Fry admitted at trial that he could not see Ditch from the witness stand.  Fry was not able to identify Ditch until the judge permitted him to leave the witness stand and approach the defense table.  Even the judge noted for the record that "[i]t was obvious from the witness stand that he couldn't see anybody out in the courtroom."  (App. at 57.)  Thus, the record is clear that there were substantial weaknesses in Fry's identification testimony which were brought out at trial.

Admittedly, the guiding hand of counsel at the preliminary hearing would have been beneficial to the defendant's case at trial.  At the preliminary hearing, trained counsel would have conducted a cross-examination of Fry to expose weaknesses in his testimony and for use as an impeachment tool at trial.

Nevertheless, we conclude that the denial of counsel ultimately did not have a substantial or injurious effect on the jury's ultimate verdict.  There was substantial evidence of guilt, and the jury was well-apprised of the weaknesses in Fry's identification testimony.  For these reasons, we conclude that the constitutional error was harmless.

## B.

Ditch's second and final claim is that trial counsel was constitutionally ineffective for failing to seek to suppress the identification made at the preliminary hearing without counsel.  Because a Pennsylvania state court adjudicated his ineffective assistance of counsel claim, we may grant habeas relief only if

the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362 (2000). For the reasons stated below, we conclude that the state court's decision was not contrary to, nor an unreasonable application of, clearly established law as determined by the Supreme Court, and thus habeas relief is inappropriate.

In considering Ditch's ineffective assistance of counsel claim, we are guided by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong of that test, "the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Under the second prong, the defendant must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In determining whether the second prong has been met, we consider "the totality of the evidence before the judge or jury," mindful that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695-96.

Applying the first prong of the *Strickland* test, we conclude that Ditch's trial counsel's performance fell below an objective standard of reasonableness. As discussed above, Ditch was unquestionably denied his right to counsel at the preliminary hearing at which the identification was made. Moreover, it is clearly established law that evidence of an uncounseled pretrial identification is subject to a *per se* exclusionary rule. *See Gilbert*, 388 U.S. at 273 (holding that identification testimony given at a pretrial line-up without counsel is *per se* inadmissible and that the state is not entitled to an opportunity to show that the testimony had an independent source); *Moore*, 434 U.S. at 231 ("*Gilbert* held that the prosecution cannot buttress its case-in-chief by introducing evidence of a pretrial identification made in violation of the accused's Sixth Amendment rights, even

13

if it can prove that the pretrial identification had an independent source.") (applying the strict rule of *Gilbert* to identification testimony given at an uncounseled preliminary hearing).

Under the strict exclusionary rule of *Gilbert*, *supra*, the identification made at the preliminary hearing without counsel was *per se* inadmissible, and the Commonwealth would not have been entitled to an opportunity to show that the identification had an independent source. Accordingly, we conclude that trial counsel's performance fell below an objective standard of reasonableness when he did not file a motion to suppress the identification. Hence, the first prong of the *Strickland* test is satisfied.

The second prong of the *Strickland* test, which requires us to determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," 466 U.S. at 694, however, is not satisfied.[2] As discussed in detail in Section II.A.4 of this opinion, the jury's verdict was supported by overwhelming evidence of guilt, including unchallenged ballistics evidence. Moreover, as also discussed therein, given Fry's admittedly poor eyesight, the pretrial identification evidence proved to be a relatively weak aspect of the Commonwealth's case. For these reasons, we cannot say that there is a reasonable probability that the result of the proceeding would have been different.

In sum, based upon an application of the *Strickland* test, we conclude that trial counsel was not constitutionally ineffective for failing to seek to suppress the identification made at the preliminary hearing. We, therefore, hold that the trial court's decision was not contrary to, nor an unreasonable application of, Supreme Court precedent, and thus habeas relief may not be granted.

III.

---

[2] *See supra* Section II.A.3 for a discussion as to why a presumption of prejudice does not apply.

14

For the foregoing reasons, the judgment of the District Court entered on June 29, 2005, will be affirmed.